We will call the first case. Salvatore Cerami v. Christina Cerami. Would both attorneys that are going to argue step up and identify yourselves for the record, please. Good morning. Graham Schmidt, SCHMID, today on behalf of the appellant Salvatore Cerami, who is in turn the independent Good morning to you both. Each side will have approximately 20 minutes to present arguments, and from that, Mr. Schmidt, you can save out some time for rebuttal. I'd like to take five minutes, please. All right. You may proceed. Thank you, Your Honors. You may please the court. The appellant is seeking to reverse the trial court's decision on July 20, 2017, that the renunciation filed by Christina Cerami of the will of James F. Cerami was a valid renunciation. Instead, the executor contends that under Section 2-8 of the Probate Act, the renunciation instrument was filed late, it does not include the required signature of the surviving spouse, and should be disallowed. Is there any cases at this point that the signature needs to be the individual that wants to renounce the will? I mean, it is a personal cause of action, so therefore, the assumption might be that you need to have the individual's signature, not an agent or an attorney. The closest case that I've been able to locate, Your Honors, is the estate of Clarkunas, K-L-E-K-U-N-A-S. It was an appellate case in the 1960s, and in that time, the Counsel General of Lithuania signed on behalf of the surviving spouse because the surviving spouse was located in Lithuania, and the appellate court at that time said that we recognize that it might make it difficult for the surviving spouse to sign, but at least under those facts of a Counsel General that didn't have an explicit signed agent, I'm sorry, power of attorney giving explicit authority to sign on her behalf, that the Counsel General of Lithuania did not have the right. There is no, as far as I can tell, case specifically on point where there's an attorney of record who's filing on behalf. We do have some jurisdiction questions, though. Okay. Kelly is claiming that really we don't have jurisdiction over any of the orders, but let's take, for example, the one you just spoke of. That was an order that is not really delineated by the court at the hearing, is it? Did the court ever say, I'm dismissing this for failure to have a signature? No, the opposite. So the renunciation was filed. The executive filed a 2619-5 statute of limitations, which in the case law is described as a petition to disallow because a renunciation is not a cause of action. But, I mean, as far as the signature, didn't you move to dismiss without prejudice so that, okay. Yes, ma'am. And if there was any ruling, which there apparently wasn't, she dismissed on the grounds of, or he, I'm not sure there were multiple judges, but when it was, when the motion to dismiss was denied, the motion to dismiss as far as the lack of a signature was really never discussed by the judge. No. At least not explicitly. There was Judge Susan Coleman in the Pearl Bay Court of Cook County. She was the second judge. The first judge was Judge James Riley, who entered the September 2016 order. Judge Coleman. She granted the motion, which she didn't do, but you moved to dismiss without prejudice. Yes, ma'am, because at the time, it was within seven months of the September 2016 date. And I recognized that the. . . Sure. Because the statute of limitations for the renunciation period will 100 percent have run under any theory by the time that this court rules, whether it's seven months from September 2016 or seven months from when the rule was submitted. But you're here under 304b1. That's correct, Your Honor. You have to have a final judgment. It has to be in the nature of a final judgment in order for any jurisdiction to attach here. That's right, Your Honor. So you requested a dismissal without prejudice, and the court never even mentions what's going on with the lack of signature. And so I don't know how that fits into 304b1 in any case that I'm aware of. How would it be a final judgment? Because the executor's motion to dismiss was the only affirmative defense. I'm sorry. It's more. . . It's not a final judgment. It's the. . . That it has to be. . . It renders some part of the decision final. What's the language again of 304b1? Sure. It's a. . .  Finally determines. Finally determines. Oh, yes. All right. So the. . . Your position is that this was final, and then the decision not to. . . The decision denying your motion to dismiss, which essentially says the seven months. . . The final. . . The renunciation occurred within the seven months. That, you believe, fits under 304b1? Yes, I do, Your Honor. And that's because of the peculiar posture of renunciations of wills. As compared to other instruments that are filed and then require some kind of judicial approval, the estate of share and other case law suggests that it's an ex parte immediate function, that simply filing the renunciation is the completed act. Yes. I mean, I understand that argument clearly. It determines. . . It determines your right. That's right. Except that that right can be unwound based on the petition. Sometimes they're called motions. Sometimes they're petitions. But it's some sort of judicial. . . It's some sort of action taken by a party, an interested party, as seeking to have that renunciation disallowed. And you're not in any way challenging the fact that earlier, before the seven-month period that the court obviously felt it was in the seven months, you're not challenging the order that gave the respondent her right to renunciation, correct? Yes, I am. The . . . Are you going back to the order that Judge Riley entered? Yes, I am. She said it was void? That's right. That the premarital agreement released Christina Cerami from any waivers that she might have made under the premarital agreement. Didn't you lose the ability to do that when you didn't appeal within 30 days? They're also challenging that order. There's no jurisdiction here for us to consider Judge Riley's order that occurred in September of whatever year it was. You have 30 days. It was made final and appealable. The case law is clear. If you don't take advantage of that immediate right to appeal, you lose it forever. That's right. Okay, so how do we have jurisdiction to go back to that issue? Sure, because the renunciation was not filed at that time. So to the extent that this court interprets the September 2016 order as restarting the renunciation period or somehow giving Christina the ability to file the renunciation again, which we disagree with, but if Your Honors find that Judge Coleman was correct in her interpretation that the renunciation right was restarted, it would have been an advisory opinion for us to appeal that until and if Christina actually renounced. I'm sorry to interrupt, but didn't Judge Riley, back in July of 2017, say that the prenuptial agreement was void and that she therefore had a right to exercise any rights that she wanted under the probate act? That's right. In September 2016, he held that the prenuptial agreement was invalid, and he says that she shall have leave to file. Leave to file does not mean all affirmative defenses against filing are hereby waived. I'm sorry, but isn't that the operative order then? Not so much the fact that she filed the renunciation, but the fact that the trial judge had indicated the prenuptial is out and therefore she could proceed as ever she wanted to. Well, I agree with that interpretation. She could proceed however she wanted to. To proceed however she wanted to does not mean that rights that had lapsed are reinstated and restarted. For instance, there was a will contest period that lapsed after six months. I assume that she would not have the ability to file a will contest. That's a spousal right that she had under the premarital agreement. The premarital agreement says that she waives her right to contest the will. Then the premarital agreement goes away. She has whatever rights she had preserved as of that date. So the fact that she's given leave to file does not mean that he's adjudicated other defenses like the affirmative defense of the sexual limitations. But since the agreement was in place, the prenuptial marital agreement, she couldn't file any will. Sure she could. No, she couldn't. The document didn't permit it until a court would determine otherwise. She has no right to renunciation. Doesn't the document itself even say that? Sure. So first of all, this is a document that she believed was invalid as being unconscionable. So there was always going to be a potential adjudication on whether the document was valid or invalid. She also waives under that premarital agreement the right to act as administrator. She petitioned to act as administrator. Before the premarital agreement was waived, she filed the rights in her petition in Cook County Court regardless of the fact that she had waived that right. The premarital agreement also says that she waives any statutory allowances. She went ahead and filed the custodial care claim within the claims period. It was dismissed, wasn't it, early on? It was initially dismissed because of the premarital agreement, and then it was resurrected. So that's a perfect counterpoint. She preserved her right for the custodial care claim, and then once the affirmative defense of the premarital agreement waiver was adjudicated, then she had her right to continue on. What was Judge Coleman's finding when she denied the motion to dismiss, I believe it was in July, and indicated that you do agree that if the time period began in September when Judge Riley entered his order, that the respondent filed within a new settlement period, correct? She filed. The renunciation still is missing the surviving spouse's signature, but the actual time was filed. That's a jurisdictional issue that I don't know that you've adequately responded to because it still has to finally determine rights. I don't know if you even argued it at the hearing or whoever was there, but I believe your motion was to dismiss without prejudice. And at that point, I think Ms. Soroffi said, we can file it, we can amend it, my signature, right now. Wasn't something like that said? In the response, they offered to, and for reasons that are unknown, they chose not to. All right. So, but the seven months, if it is, you know, if the response position is correct, you would at least concede that when the trial judge, that is Judge Riley, determined there was a new, that she would be allowed to renunciate the will, that there was a, she did renunciate the will within the seven-month time period, if it began. That's true. January is within the seven months of September 2016. Okay. I'd like to speak again about the September 2016 decision, order, as whether it's restarting the renunciation or not. All right. I direct this Court's attention to the 1975 case of Dalton's Estate. Dalton's Estate had a little bit of an unusual circumstance. A disabled surviving spouse was represented by a guardian. In guardianship court, the disabled, the guardian was able to get authority from the disabled judge authorizing the renunciation of the will over in the decedent's court. Is this in your reply brief? It is not in my reply brief. Is it in your opening brief? It's not in my opening brief, no. All right. So now you're citing authority, you didn't cite, I mean, I know it's not, I didn't think it was in the opening brief, but I didn't know it was in the brief. That's right, because I'm trying to respond specifically to Your Honor's question a little bit further. All right. But under the rules, you're supposed to put these things in your brief. Okay. I'll move on to another topic. I don't think counsel has a fair opportunity to respond if you're citing a new case for the first time. Very well, Your Honor. All right. But why don't you refer to the cases you did cite? I guess you can attempt to do that by motion. Okay. Very good, Your Honor. The authority to leave to file a document, which is given quite often for amended complaints and any other number of pleadings, is not an adjudication on any other affirmative defenses that might have been available to any of the other litigants. Inherent in Judge Coleman's decision that the renunciation period was restarted in the September 2016 order is that also any affirmative defenses that might have been available have also been considered and rejected. There's nothing in the record that suggests that Judge Riley considered or even allowed for presentation of the affirmative defense of statutory limitations. His only concern, and the only issue that was presented to him at any time, was whether the premarital agreement was valid or invalid. Once it's declared invalid, then those rights, I'm sorry, the waiver of those rights is disregarded and she can seek them. But there was no sign of interruption. Was there really more of an issue about the damages? Because Judge Riley, through transcript, refers repeatedly that the premarital agreement was breached by the decedent. So that wasn't the issue of whether or not the premarital agreement was valid, but it was an issue more of the damages and how to assess the damages and whether or not what type of damages she should receive. I think there's even reference to punitive damages as well. My understanding of Judge Riley's decision, and Your Honors are welcome to read the transcript, my understanding was that he believed that because of the numerous breaches, Salvatore, I'm sorry, James Cerami, the decedent, never had the intent, the meeting of the minds with Christina Cerami to enter into the agreement. So there was no actual meeting of the minds, no obligations, and that's why he decided that the premarital agreement should be invalidated and hold. What would be the point of his ruling? What would be the point of the hearings that were had? It went over several days. To restore the custodial care claim, which is valued at $170,000. To restore the spousal award. But wasn't it also to restore or actually allow a claim of renunciation? I don't know what evidence in the record would suggest that. The word renunciation was not used. So you're saying now that Judge Riley didn't really mean that she could renunciate. She could proceed on whatever rights she had and that's section six of the premarital agreement she was released from. Okay. And wasn't one of those the right to renunciate? Yes. From the defense of the premarital agreement, it was no longer valid. So what would be the point of his ruling if he wasn't going to allow her to proceed? So the renunciation was just one of several spousal rights that were waived under section six. What would be the point of him ruling that she had a right to renunciate if she didn't concomitantly have the right to renunciate within the statutory period of seven months? Sure. Judge Riley was speaking of the rights that are available to most and all spouses. He was not presented with any of the defenses of such limitations. There's no mention in the record of any reason that he would have considered those defenses. See, what Judge Coleman is asking the executor to do here is to actually file a response to a right that had never been invoked, that it's asked this court for an advisory opinion, that in September of 2016 the executor should have filed an appeal that said, we don't know if Christina Strand is going to renounce. She's never spoken about renunciation. She's never filed an inverse renunciation. But just in case we'd like to stop her from 30 days her ability to do so, that would have more 304B1 appellate jurisdictional problems than the signature issue. This appellate court — Doesn't a court have the power to amend, to allow an amendment at any time, even after judgment and even on appeal? Isn't that the law? To allow an amendment to what, Your Honor? To a pleading. To a pleading. Up until the judgment on the pleading with good reasons, not prejudicing the other side, those amendments can be allowed. And how would you be prejudiced? Because you're the one that said that the motion to dismiss for lack of a signature would be without prejudice. There's no discussion of prejudice in any of the case law. The renunciation period has been held many times to be — or the requirements of the renunciation have been held to be mandatory. There's been no discussion in Rosene's or Goodlett or any of the other cases stating that prejudice should be a factor. Okay. I don't hold — those cases aren't directed to anything involved in the signature. But — so I'm not sure that they would even be applicable. But let's talk about the estoppel. Because isn't that really essentially what — if the seven-month period, you know, is allowed, there's certainly an argument to be made that under principles of equitable estoppel, when Judge Riley gave her the right to everything that she would have had, had this agreement not been now void, it would be under a principle of estoppel, wouldn't it, that she would be allowed to file within the seven-month period? So in October 2015, that's when the original seven months had passed. That's when our affirmative defense stated that the right to renounce expired. The ability of Judge Riley, even if he so chose, after the October 2015 date is void. There's no authority to extend or to enlarge the renunciation period after such time as it had passed. The equitable tolling, which has never actually been applied in Illinois to any surviving spouse who had knowledge of the decedent's death and the fact that there was a will that did not provide for the surviving spouse. The equitable tolling cases have focused on misrepresentations, something that would have prevented the surviving spouse from being able to exercise her rights within the seven-month period. If counsel says it was all breaches, what is your response to that? Sure. A breach is when there's an obligation, mutual obligations in a contract. A waiver of a statutory right and then filing that statutory right is not a breach of contract. It's simply asserting the right that you've waived. Waivers of rights are very common in prenuptial, postnuptial agreements, divorce agreements, and then also in contracts, waiver of jury trial and such. So my question is whether or not the multiple breaches that Judge Riley found gave him the or caused him to void the agreement would be a basis for a stop. That's what I'm talking about. No, Your Honor. The actions that James Ramey took during his life from 1993 to 2013 are unrelated to Christina Ramey's knowledge and litigation strategy in the first seven months after the will was admitted. Whatever his behavior, good, bad, or indifferent during his lifetime, Christina had awareness of the fact that she wasn't provided for in the will. All right. We're going to give you some time for rebuttal. Anything else you want to add at this point? No, Your Honor. Thank you very much. All right. Okay. Mr. McKnight. May it please the Court. Neal McKnight on behalf of Christina Serrano, your colleague. The first thing I'd like to remind the Justices is that both the Probate Act and the Illinois Code of Civil Procedure are to be read liberally to construe the provisions to bring disputes based upon substantive rights. And so to the extent that there's any issue with respect to putting aside the jurisdictional questions, those are what I would say the prism through which the Court should look at these issues. Finally, there's this discussion about what the intention was of Judge Riley and the trial court with respect to the issues arising out of the September 22, 2016, order. And counsel has represented to the Court that Judge Riley made no consideration with respect to the issues arising out of Estoppo and the consequences of his ruling and perhaps the invalidation of the premarital agreement and its effect on probate rights. And that's actually incorrect because if you look at the record at 753, on a hearing that occurred on August 29, 2016, Judge Riley repeatedly said, and this is at 753, said, still hanging over our heads in these proceedings is whether or not I need to declare the entire premarital invalid or do I just go step by step and enter a judgment. And counsel cautioned him to be careful with respect to those issues. And he said, the judge says, I haven't done that. And then there's additional colloquy from counsel. And then Judge Riley says, well, there's a lot at play, even more so than what you said. In this premarital agreement, she waives her probate rights to renounce the will to take her spousal claims. Those are all things that have to be balanced out here if I get there. So go ahead with your response. So clearly, based upon the arguments that occurred on August 29 and the statements of the court, Judge Riley did exactly what we are asserting he did. He took into consideration the concepts of equity. He took into consideration the concepts of tolling. And he had those in mind when he ruled on the decision to invalidate the premarital agreement. In addition, later in the same argument, Judge Riley specifically states that he is going to consider putting the parties back into the same position they were prior to the contract being executed. And if the contract had never been executed, there would be none of these issues with respect to whether or not she had the right to renunciation. Well, why couldn't she have filed a petition early on, during the first seven months? Why couldn't she have filed a petition to admit her to renunciation? One, because the court had already ruled on a number of occasions that the agreement was there. And second, that would constitute a breach of the agreement. So merely filing the renunciation would result in a breach of the agreement, which would result in if the court … Well, what about the spousal? Well, that is basically the spousal. Why wouldn't that be a breach, just like what you're saying the renunciation would be? Because that was based upon – it arose out of the breach that occurred from the decedent, Mr. Surami, and that's when she said that she was entitled to it. And that was also based on the equitable principles arising out of the premarital agreement, saying that premarital agreements can be set aside or modified based upon certain conditions in which a spouse is living in a situation where she needs help or she needs support. But those things were all contained in the agreement, weren't they, that she was giving up all those things? They were. So I don't see why – one is a breach and one isn't a breach. So she can bring the one, but she can't file early on for the renunciation. Well, because it's different. The basis for the CE… Spousal claim, or what was it called? Custodial support is what it is. Custodial support. And that's a different animal because that's based on the common law principles that apply to premarital agreements that's saying that if it's so onerous that a spouse can seek relief from that under the circumstances, then that wouldn't be a breach because that's recognized in the law. Whereas the specific renunciation is specifically addressed in the agreement and says, hey, if you do this, that's a breach of the agreement. Why doesn't the seven months run from the period when the will was admitted? Because it was told equitably by Judge Riley on September 22, 2016. Well, was that the basis of Judge Coleman's ruling as well? It is the basis of Judge Coleman's ruling. In fact, Judge Coleman didn't rule on the substantive issue as to whether or not there was equitable tolling. Judge Coleman simply said, Judge Riley previously ruled on this. I'm not going to go back. You have the opportunity to appeal. And, in fact, if you look again at the transcript there, there's an attempt by counsel sort of to resurrect this and make a collateral attack on it saying, you're making a specific finding about the renunciation. And Judge Coleman quickly says, she puts that down and says, no, no. I'm saying that this is the law of the case that was decided previously, and it was on September 22, 2016. And if you had wanted to do that, you should have appealed within the time that you were allowed after September 22, 2016. So I have a question about that, Laura, because at the same time when Judge Riley puts 304A language, he also puts down a continuation date for status. What was the status for? One, Judge Riley had announced to both of the parties that he was leaving the bench. He was retiring on November 2, 2016. And there was follow-up feedback and forth between the counsels. But one of the issues he said was, you have to decide whether or not you're going to appeal this order. And so he said, come back and see what the status is as to whether or not you're going to appeal the order so that we know what the next steps are and who the case will ultimately be assigned to. So even though it had 304A language on September 22, he was still giving the parties an opportunity to decide whether or not they were going to appeal? Well, he said whether or not there was going to be an extension, and, in fact, what happened after that was there was a request for additional time to file a post-trial motion. And that was filed by the estate. And, ultimately, they waived the post-trial motion as well. And, in fact, the issue that came up with respect to that request was that the estate asked for additional time because the transcripts weren't prepared from the hearings and from the trial that occurred at that time. Well, the whole matter of the estate wasn't over when Judge Riley entered his ruling. No, it wasn't. He did enter a specific ruling granting – well, finding the – settled the premarital agreement void. Correct. That was basically the whole of his order. But that didn't end the case. But it did decide that she – that the agreement was void. It did decide that she was – She used 304A language and said there's no justification for delay of enforcement and appeal of this man. And I would go one additional step. I would say that the judge, at that point, found that it was told. And that's a factual determination that the judge makes based on the circumstances that are presented in the evidence of trial. Well, but in terms of the appealability – Yes. And do you believe that the state is now trying to attack Judge Riley's ruling? I do. I believe it's a collateral attack on the ruling based upon the attempt. And what they did is they chose not to appeal and not to raise those issues. They waited for the renunciation and brought what were issues that should have been raised in response to Judge Riley's comments saying you can go ahead and file. Well, one thing you – though you're arguing that we don't even have the right to decide the seven-month period, aren't you? Yeah. I think that's over. Okay. Well, how is that over? Because Judge Coleman denied the motion to dismiss. And under 304B, that finally determined that the renunciation was complete and effectuated and timely. So why isn't there jurisdiction under 304B-1? Because what Judge Riley – that references back to the September 22, 2016, order. What Judge Coleman did was Judge Riley – pardon me. What Judge Coleman did was she relied upon Judge Riley's ruling and said you didn't do this and you didn't appeal this in a timely fashion. I can't – and she said – And her ruling had to do with the argument that the seven-month statute of limitations was barring any further relief for her. She did make that determination. She made the determination and she based that determination on the ruling of – Well, Judge Riley never addressed any statute of limitations. Well, he did by allowing – That's what you're arguing. Yeah, and that's my point. My point is that's the estoppel argument and that's the tolling argument. Well, I think there are two different issues, whether estoppel applies and whether or not there's jurisdiction for the seven-month period. I will note that in the case of Senate of both parties, there's a specific recognition, despite this language about mandatory provisions of the probate act, that in the estate of Goodlatte, they specifically recognize that the concepts of equitable estoppel, tolling, and waiver apply to statute of limitations. So to the extent there's – And there isn't any actual case like this one. No, there isn't. I agree with you. This is sort of a case of first impression. I will agree with you there. All right. And on that note, I just would point out that there's, for a lack of a better description, you know, that there's some quotes in the Leonhardt case, which is cited by counsel, and it essentially says, Or claims expressed in their objects and purposes clearly set forth that courts are not confined to the literal meaning of the words used. When you do so, you will defeat the obvious intention of the legislature and result in absurd consequences not contemplated by it. All right. What about this signature? Why shouldn't we find that the – we can – why can't we say that the signature was necessary? Because I think that an attorney who's appeared on behalf of the claimant signed and submitted the documentation. I think that's exactly what the Leonhardt court said. I think that's exactly what the concepts of the – That didn't involve a signature. It didn't, but it did involve – actually, it did involve – I think it did involve a signature, but don't hold me to that because I'm not understanding a little fuzzy on the Leonhardt. But that is exactly what the provisions of the Provisional Procedure and the Probate Act with regard to literally construing it. And that's back to your comments to counsel with respect to the issues of whether or not this was a dismissal with prejudice or without prejudice. And because it wasn't, it can be modified at any time, I think, at this point. So one of the cases on point that said that the attorney can sign the document, but is there anything in the record that we can look at that would have given this attorney the authority to sign a document on her behalf? I don't know that there's a specific document that I can go to with respect to the record, but I think pursuant to the Supreme Court rules under 137 as well as the Illinois Code of Civil Procedure, the understanding is that an attorney can act on behalf of an attorney. To do otherwise would be a violation of 137. What about the argument that to bring an appeal sooner than the renunciation was filed would have been asking us to issue an advisory opinion? Well, that goes back to my statement that this is a finding that equitable tolling applied to a statute of limitations, which is a factual determination made by the trial court. Whether or not they should have raised that issue within the time to appeal the September 22, 2016 order. And so that's particularly important because that would have been Judge Riley's call at that point, and I think that's what Judge Riley's call was. And he looked at the facts, he looked at the circumstances, and he made that determination. And I think that's all I have. All right. Thank you. Thank you, Your Honors. May it please the Court. You, Your Honors, will have the ability to look at all the transcripts from the trial that led to the September 2016 hearing. And you'll be able to evaluate opposing counsel's statement that Judge Riley was making a decision on equitable tolling. What I think you'll find is that Judge Riley spent no time and considered no evidence of what was happening during the seven-month renunciation period, but spent his time talking about the premarital agreement. So what I think opposing counsel is asking this Court to do is to say that every time a spouse has a premarital agreement or any written agreement where they've waived certain probate rights, then there is equitable tolling until and if that person eventually brings in action to have that waiver declared invalid. The Probate Act is a complicated, interlocking set of statutes, limitations, and notice requirements that are designed for an orderly administration of the estate. If through equitable processes, those statute of limitations can be ignored simply because someone has signed a waiver at some point, there is the possibility of undermining the system, very much so. Which is why, for instance, the rural contest six-month statute of limitations is considered jurisdictional because the courts have been so afraid of having the ability of equity to allow someone to come in and say, I want to re-litigate some right that I have waived. And if Judge Riley even had decided to say that through equitable tolling, the premarital agreement should mean that the seven-month renunciation period is tolled up until the premarital agreement is disallowed, that's going to lead to a lot of public policy questions of when and if the six-month, the seven-month statute of limitations can be tolled for waivers. For instance, in the Probate Act, there's three-month and six-month claims periods. And those are relied on very heavily by the probate court to allow for the distribution and closing of estates. And if someone can come to a court and say, well, I was under the understanding that if I actually, even though I waived a claim, that if I filed a claim, I was breached. And then the court said, okay, let's hear you out. Let's talk about the underlying waiver. It would then lead to a lot of complicated problems for the probate court to actually administer the estates. Lastly, I'll say opposing counsel referred to the custodial care claim as being something arising out of the common law. It's a statutory claim that is provided for in the Illinois Probate Act and exists and lives only in the Illinois Probate Act. Thank you, Your Honor. All right. Case is well argued and well briefed. We will take it under advice.